COLUMBIA GENERAL TERM, June, 1848.    *Harris, Watson, and Barculo,* Justices.

### HAYWOOD *vs.* NOONEY and others.

W. having a life estate in a piece of land which had been set off to her in satisfaction of her right of dower in a farm, conveyed the same to H. for the consideration of $400, for which sum he gave his note. On the same day H. conveyed the same interest to N. who already owned one half of the farm. H. refusing to take N.'s note for the purchase money, J., on behalf of N., gave his note to H. for $400. This note was afterwards paid out of the proceeds of a note for $600 made by N. and signed by J. as his surety, and discounted at a bank. At the time the life estate of W. was conveyed by her to H., and by H. to N., the latter conveyed absolutely to D. (who owned the other half of the farm,) a portion of the land which had been set off to W. for her dower, and D., in consideration thereof, released to N. all his interest in the residue of the farm. N. then mortgaged the whole farm (except that part conveyed by him to D.) to J. to secure $600, and J. agreed to pay the note which he had signed as surety for N., and he subsequently did pay it. On a bill filed by the plaintiff, as the assignee of the bond and mortgage executed by N. to J., for the foreclosure and satisfaction thereof:

*Held,* that the case came within the principle of *Jackson* v. *Austin,* (15 *John.* 477,) and that the mortgage was entitled to a preference over a prior judgment against N.

*Held also,* that any interest which N. acquired in the mortgaged premises, by means of the transaction, was chargeable with the payment of the mortgage, to the amount of $400, and interest, in preference to the prior judgment against N.; on the ground that that portion of the mortgage was, in contemplation of law, given for the purchase money of the premises conveyed to N. by W.; the purchase by N. having been effected by means of the note and money of W.

Haywood *v.* Nooney.

IN EQUITY. In 1829, Isaac White died intestate, and seised at the time of his death of a farm in Hillsdale, Columbia county, containing about 88 acres. Prior to the 28th of April, 1830, Walter Dorchester had purchased of the heirs of White, an undivided half of the farm, subject to the widow's right of dower. The defendant Nooney had become the owner of all the other half, except one share of *one-fourth* of *one-sixth* and *three* other shares of *one-fifth* of *one-sixth each,* subject also to the widow's dower. These shares were also subsequently acquired by him; the dower had also been admeasured and 39 acres, three roods and 13 rods had been set off in satisfaction of the widow's right. On the 28th of April, 1830, the widow of White conveyed her interest in the land to James Hunt, for the consideration of $400, for which he gave his note. At the same time Hunt conveyed the same interest to the defendant Nooney. Hunt refused to take Nooney's note for the purchase money, and one Artemas Johnson on behalf of Nooney gave his note to Hunt for $400. A few days previously, for the purpose of obtaining money to make the purchase of the widow's dower, Nooney had made his note for $600, which had also been signed by Johnson as surety, and which had been left at a bank in Connecticut to be discounted. It was agreed between Johnson and Nooney that the note he gave to Hunt should be paid, out of the proceeds of the $600 note, when discounted. Subsequently, Nooney received the proceeds of that note, and paid Johnson's note to Hunt.

At the same time that the widow's right of dower was conveyed to Hunt, and by Hunt to Nooney, the latter conveyed absolutely to Dorchester 33 acres, one rood and 33 rods of that part of the farm which had been set off to the widow for her dower and Dorchester, in consideration of such conveyance, released to Nooney all his interest in the residue of the farm. Nooney also, at the same time, mortgaged the whole farm except that part conveyed by him to Dorchester, to Johnson to secure $600; and Johnson agreed to pay the note which he had signed as security for Nooney, and subsequently did pay it. The plain-

Haywood *v.* Nooney.

tiff is the assignee of the bond and mortgage executed by Nooney to Johnson.

On the 12th of December, 1828, John Nooney and Amos M. Knapp recovered a judgment in the supreme court against George Nooney for $300 of debt and $14,48 costs. On the 15th of May, 1834, the premises described in the mortgage executed by Nooney to Johnson were sold upon an execution issued on the judgment against Nooney, and under such sale the sheriff conveyed the premises to the defendant Garner on the 17th of August, 1835.

The bill in this cause was filed for the foreclosure of the mortgage, and the plaintiff claims that his lien was entitled to a preference over the lien of the judgment under which the defendant Garner claimed title ; on the ground that the mortgage was in fact given for the purchase money. The case was heard upon pleadings and proofs by the late vice chancellor of the third circuit, and a decree was made on the 30th day of April, 1834, declaring the priority of the plaintiff's lien upon a portion of the mortgaged premises. From this decree, the defendant Garner appealed.

*H. Hogeboom,* for the plaintiff.

*J. Sutherland,* for the defendant Garner.

*By the Court,* HARRIS, J. It was decided in *Jackson* v. *Austin,* (15 *John.* 477,) that where a purchaser of land, at the same time he receives a conveyance, executes a mortgage to a third person who advances the purchase money for him, such mortgage is entitled to the same preference over a prior judgment as it would have had if it had been executed to the vendor himself. In its legal effect it is the same as though the purchaser had executed his mortgage to the vendor, for the purchase money, and he had then assigned it to the party advancing the money. The transaction in this case is singularly complicated, yet I think it is shown to be within the principle of *Jackson* v. *Austin.* Nooney was enabled to pur-

chase the life estate of the widow, and thereby acquire the inter-est of Dorchester in that portion of the farm embraced in the mortgage, by means of the note and money of Johnson. The several parts of the entire transaction seem to be inseparably connected. Suppose, instead of conveying her life estate to Nooney, the widow had conveyed it to Dorchester, and in con-sideration of such conveyance, he had conveyed to her his interest in the residue of the farm; and that then she had con-veyed that interest to Hunt, and Hunt had conveyed to Johnson, and Johnson to Nooney, taking a mortgage for the amount paid by him to Hunt; would any one have made a question whether the mortgage was entitled to priority? If not, how does the transaction, as it occurred, differ in substance and legal effect from the case supposed? The result is the same, and the only difference which I can perceive is, that in the transaction as it took place, the result was reached by a mode less circuitous than it would have been, in the manner supposed.

If this view of the question be correct, it follows that any interest which Nooney acquired in the mortgaged premises by means of the transaction of the 28th of April, 1830, is charge-able with the payment of the mortgage, to the amount of $400 and interest, in preference to the prior judgment against Nooney, on the ground that that portion of the mortgage was, in contemplation of law, given for the purchase money of the premises then conveyed to Nooney. That portion of the mort-gaged premises, which had been conveyed to Nooney prior to the 28th of April, was clearly chargeable with the payment of the judgment as the first lien thereon, and the defendant Garner has undoubtedly obtained a good title thereto by virtue of his deed from the sheriff.

The result of this view of the case is, that the lien of the mortgage is entitled to a preference over the judgment, to the amount of $400 and interest, upon the undivided half of the premises described in the mortgage, and also upon an estate during the life of Mrs. White in that part of the 39 acres, 3 roods and 13 rods, set off for her dower in the farm and not included in the conveyance from Nooney to Dorchester, and as to the

residue of the premises, that the lien of the judgment, being prior to that of the mortgage, the sale and conveyance by the sheriff to the defendant Garner has vested in him an absolute title as against the mortgage. The decree appealed from must be modified accordingly. Neither party is to have costs upon this appeal.