## ANSON ROOT

### *v.*

## GEORGE CURTIS.

1. EVIDENCE—*degree thereof required.* If proof be admissible at all to contradict the consideration of a mortgage, it must be clear and satisfactory.

2. NOTICE—*knowledge of facts when necessary to be shown.* And where persons who are not parties to the instrument are sought to be affected by such proof, knowledge of the facts must be plainly brought home to them.

3. ERROR—*will not always reverse.* Although the court below may have rejected competent evidence, yet if its admission would not have changed the condition of the case as respects the rights of the party complaining of the alleged error, its rejection could have worked no injury to him, and the judgment would not be reversed for that cause.

4. JUDGMENT LIEN—*elder and junior liens.* Where a judgment debtor acquires title to land after the judgment was obtained, and immediately

executes a mortgage thereof to a third person to secure him against some contingent liabilities, not to secure the purchase money of the land, the judgment will be the elder lien.

APPEAL from the Court of Common Pleas of the City of Elgin; the Hon. RICHARD G. MONTONY, Judge, presiding.

This was an action of ejectment commenced in 1852, in the Circuit Court of Kane County, by Anson Root against George Curtis, to recover certain premises situate in that county. The history of the case from its commencement to the trial at the January term, 1865, of the Court of Common Pleas, which resulted in the judgment from which this appeal is taken, will be found in *Curtis* v. *Root*, 20 Ill. 53, and the same parties in 28 Ill. 367.

The last trial in the court below resulted in a verdict and judgment for the defendant. Root, the Plaintiff, brings the case to this court by appeal.

The circumstances under which the controversy arose, are fully set forth in the opinion of the court.

Mr. S. WILCOX, for the appellant.

Messrs. STORRS and MANLEY, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The facts upon which the decision of this case depends are briefly as follows: There were judgments against one Ambrose, on which executions were issued, and levied upon merchandize belonging to him, of sufficient value to satisfy the executions. Ambrose released the goods by executing to the sheriff a delivery bond, in which Root, the plaintiff in error, was his security. He also appealed from the judgments to the Supreme Court, and Root was likewise his security in the appeal bond. The appeals were afterwards dismissed in the Supreme Court, and a *procedendo* issued. At the time of

executing the delivery bond, Ambrose gave Root a chattel mortgage on the goods, to indemnify him against his liability. Ambrose soon afterwards, with the consent of Root, exchanged these goods with Morgan and Padelford, for the lands in controversy in this suit. Ambrose received a deed for the lands, and immediately gave Root a mortgage upon them in place of the chattel mortgage surrendered, and to indemnify him against the same liabilities. The lands were afterwards levied on and sold under executions issued upon the aforesaid judgments, and Curtis, the defendant in error, regularly derived title under this sale. Subsequently Root foreclosed his mortgage upon the same lands, caused them to be sold under the decree, became the purchaser, and claims title under said sale. The question is, was the mortgage or the judgment the elder lien?

When this case first came before this court, as reported in 20 Ill. 57, it was held that Root, in relinquishing the goods, upon which he had a mortgage, to Morgan and Padelford, might be considered as having furnished the purchase money for the land, and taken the mortgage to secure himself for the purchase money thus advanced. This language was used in reference to an instruction which had been given, and which was drawn upon the hypothesis that the mortgage had been given for the purchase money. Although the record may have disclosed a different state of facts, yet the court evidently spoke upon the hypothesis presented by the instruction, and assumed that the mortgage was given on its face for the payment of some certain sum of money. The court then held that if the mortgage was given to secure the payment of the purchase money, it created the prior lien.

When the case again came before this court, as reported in 28 Ill. 376, it was in reference to an instruction which told the jury that although the mortgage upon its face was not given to secure the purchase money, but for an entirely different consideration, yet if it was in fact given for the purchase money, its record was sufficient to put the purchaser on his guard. The court held this instruction wrong, speak of the

mortgage as if its precise conditions were now for the first
time brought to their notice, and say—" on its face the mort-
gage did not show that it created a lien prior to that of the
judgment. When the purchaser saw this was so, he was not
bound to inquire whether the mortgage did not express on its
face a falsehood. If he is to be charged with any extraneous
facts, qualifying or contradicting the face of the mortgage, it
should only be done upon clear and satisfactory proof that he
had actual knowledge of such facts." The court then say,
that such proof was entirely wanting in the case, without
deciding whether it could, in any event, be made by parol, and
remand the case for another trial because of the error in the
instructions.

We do not deem it necessary, on the record now before us,
to decide whether parol proof was admissible, as between
these parties, to show that the mortgage was really given as
security for the purchase money, instead of having been given
as an indemnity against loss upon the delivery and appeal
bonds, as it purported upon its face. As stated in this case in
28th Ill. such proof, if admissible at all, must be clear and
satisfactory, and knowledge of the facts must be plainly
brought home to the parties sought to be affected. It is suffi-
cient to say, that in the case before us, the proof offered, so far
from showing that the goods in question belonged to Root, and
that the mortgage was given to secure the payment of their
value, as purchase money, rather tends to sustain the face of
the mortgage, and to show that the mortgage was what it pro-
fessed to be, merely a security against loss on the bonds, taken
in exchange for another security of the same sort that had been
surrendered at the request of Ambrose. The depositions of
both Morgan and Padelford, the exclusion of which from the
jury is assigned for error, show that these persons dealt with
Ambrose and not with Root, for the goods, and that Root
simply discharged the goods from the operation of his lien,
and it is no where even intimated in the depositions, that the
value of the goods was to be paid to Root either by themselves

or by Ambrose, or that Root had any interest in the goods or their proceeds, beyond indemnity on his suretyship. Even if the possession of the goods was in Root, it is not pretended that he held them as his own property, or in any other way than as prescribed by the mortgage. All the statements in the depositions, and the further proof tendered by counsel, "that the mortgage was executed and delivered to the plaintiff, for and on account of his having let the goods go in payment of said land," are consistent with the provisions of the mortgage, and do not even tend to show that any sum was due from Ambrose to Root, by way of purchase money, or that the entire transaction was any thing else than an exchange of one indemnity for another. If Root had paid up the judgment before this exchange he would have been entitled to the goods— if after the exchange, to the lands, for re-imbursement, and there is no proof offered to show that if he did not pay, he would have been entitled to either goods or land. Neither on its own face, nor in the light of the proof offered, can this mortgage, in any proper sense, be said to have been given for the purchase money. On the contrary it is plain that it was simply what it professed to be by its terms, a security against a contingent liability. Root neither bought the land of Morgan and Padelford, nor sold it to Ambrose, but merely agreed to substitute a lien upon the lands for that upon the goods, the lien in both cases being for precisely the same purpose and of the same character. No question is made upon the record except in regard to the exclusion of this evidence, and as this evidence, even if of a nature to be admissible, would have still left the mortgage what it purported to be upon its face, a mere indemnity against a contingent liability on the delivery and appeal bonds, its exclusion worked the appellant no injury, and the judgment is therefore affirmed.

*Judgment affirmed.*